Filed 3/28/24  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS ADOLFO SOSA LOPEZ,<br><br>Defendant and Appellant. | F085439<br><br>(Super. Ct. No. MCR073100)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  James E. Oakley, Judge.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Meehan, J. and Snauffer, J.

Counsel for defendant Luis Adolfo Sosa Lopez submitted a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), asking this court to conduct an independent review of the record on appeal. Although we offered defendant the opportunity to present his own brief by way of a letter, he has not responded.

Pursuant to *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we have reviewed the entire record. Consistent with our Supreme Court's direction in *Kelly*, we provide a brief description of the relevant facts and the procedural history of this case. (*Kelly*, at p. 110.) Finding no arguable error that would result in a disposition more favorable to defendant, we affirm.

## PROCEDURAL SUMMARY

On June 28, 2022, an amended information was filed charging defendant with two counts of second degree burglary (Pen. Code,[1] § 459, both felonies; counts 1 & 2), two counts of vandalism causing damage of $400 or more (§ 594, subd. (a), both felonies; counts 3 & 4); possession of burglary tools (§ 466, a misdemeanor; count 5); cutting a utility line (§ 591, a misdemeanor; count 6); and possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a), a misdemeanor; count 7). The amended information further alleged a strike enhancement applicable to counts 1 through 4 (§ 667, subds. (b)–(i)), in addition to other potential aggravating factors.

Prior to the start of a jury trial on the charges, the trial court granted defendant's motion to bifurcate the trial to deal separately with the alleged enhancement and special allegations. Thereafter, on July 19, 2022, the jury found defendant guilty on counts 1 through 6, but deadlocked on count 7. After the court declared a mistrial on count 7, the prosecution asked the court to dismiss that count. Following the bifurcated trial on the

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

2

alleged enhancements and special allegations, the jury found true the allegation defendant had a prior "strike" conviction.

Defendant was eventually sentenced to seven years four months in prison. The sentence consisted of the aggravated term of six years on count 2 (second degree burglary), and one-third the middle term of four years for count 1 (same), which constituted 16 months. The trial court then imposed and stayed the terms for counts 4, 5, and 6, pursuant to section 654.

**FACTUAL SUMMARY**

On January 17, 2022, City of Madera Police Officer Kenneth Hall was dispatched to a local furniture store to conduct a burglary investigation. After talking to the owner of the business, Hall started his investigation by looking for evidence of what had occurred at the furniture store. Hall found three holes in the wall shared between a vacant adjacent business space and the furniture store that were about 12 inches in width. One hole led to the locked storage room at the furniture store but did not provide access to the rest of the business. The second hole led to an unlocked storage room in the furniture store and provided access to the rest of the store. A silver ventilation pipe in the storage room blocked the third hole, preventing access there. The three holes appeared to have been made in the same manner.

After observing cameras in the furniture store, Hall was given access to the surveillance videos. These videos were eventually downloaded by Hall and another officer to a USB drive. The surveillance videos indicated the burglary occurred at approximately 7:00 a.m. The videos showed someone, later identified as defendant, "[a]rmy crawling" on his hands and knees after entering the business through one of the holes. Defendant was seen crawling on his hands and knees towards the cash register, which he then opened and took money from the drawer. Hall observed defendant continuing to crawl as he grabbed a speaker box in the furniture store and then ran toward

3

the back of the building. In his testimony, Hall also described in detail what defendant was wearing while he was in the furniture store. Finally, the videos showed defendant exiting the store through its back door, leaving the area while holding the speaker and riding a white scooter.

Two days later, on January 19, 2022, California Highway Patrol (CHP) Officer Mark Cosentino responded to an alarm at the Madera field office of the Department of Motor Vehicles (DMV). When Cosentino and other officers arrived, an additional alarm indicating glass breakage had also been triggered. The manager of the DMV field office, who also received an alert about the alarm, met the officers at the location and provided them with keys. The officers then set up a perimeter around the building, with two officers remaining outside, each in a different location. Cosentino and another officer then started an exterior search of the building, eventually using the key they had been provided by the DMV manager to unlock an employee entrance door.

When they entered the DMV building, Cosentino noticed the smell of burning metal. Cosentino linked the smell to a metal grinder he found on top of a metal safe that appeared to have been damaged by the grinder. While continuing the search inside the building, Cosentino and the other officer found tiles and debris on the floor of a women's restroom. In one stall, the officers found a large rectangular hole in the wall that led to a vacant office. Cosentino described how the DMV manager attempted to use the key to gain access to this office and how the lock came apart from the door into the DMV manager's hand.

While describing other damage to the building and its contents, Cosentino recounted seeing cabinets and desk drawers that appeared to have been searched, suggesting items had been taken. There was also evidence of another attempt to cut a hole in the wall of an office. In this office, Cosentino observed a white electric scooter plugged into a wall socket.

4

Cosentino was able to obtain surveillance videos for the day of the incident from the DMV manager. In one video, defendant was shown using a crowbar and a small mallet, or screwdriver, to rip the alarm keypad off the wall. Surveillance videos also showed defendant in the control room, standing on a desk, ripping the surveillance camera from the ceiling, and yanking the wires from it. Defendant was also seen using a crowbar to pry open cabinets. When observing these videos, Cosentino was able to describe the clothing worn by the intruder in the DMV, which bore similarities with the clothing worn by the intruder during the earlier incident at the furniture store.

While reporting back to dispatch, Cosentino heard a loud noise at the front of the DMV, which had not yet been searched. This was in the area where the front door was located. Surveillance videos showed defendant running out these doors. Other officers chased defendant once they saw him leave the building and caught him when he fell into a ditch. Cosentino eventually searched defendant and found a California identification card with the name " 'Luis Sosa Lopez' " on it and a glass pipe, commonly used for smoking methamphetamine. Defendant was then arrested and transferred to the local hospital because he appeared to be unable to walk.

Hall, who had helped apprehend defendant when he ran from the DMV, spoke to other officers about the similarities between the burglary of the DMV and the burglary of the furniture store two days earlier. Madera Police Detective Jacob Dunn reviewed the initial reports, viewed the surveillance videos, and talked with Hall. Dunn also examined surveillance video from the furniture store in which an individual could be seen leaving on a white scooter and compared it to the white scooter that was located during the CHP officers' investigation at the DMV, and concluded they were a match. Dunn also compared the clothing worn by the intruder shown in the furniture store surveillance videos with the clothing defendant was wearing during the burglary at the DMV. Dunn

ultimately concluded defendant was also responsible for the burglary at the furniture store.

Evidence was also offered about the damage done and value of items taken from both locations that met the statutory minimums specified in the charges brought against defendant.

During the bifurcated trial on the enhancements and factors in aggravation alleged against defendant, the prosecution referenced evidence submitted at trial, and introduced additional evidence consisting of certified documents showing defendant's prior conviction for first degree residential burglary in 2011, and a prior state prison term for that offense.

## DISCUSSION

Having carefully reviewed the entire record provided in this case, we conclude there are no arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d at pp. 441–443.)

## DISPOSITION

The judgment is affirmed.